# United States Court of Appeals
## For the First Circuit
_____

No. 26-1209

GORDON-DARBY HOLDINGS, INC.,

Appellee,

v.

ROBERT L. QUINN, in the official capacity as Commissioner of the New Hampshire Department of Safety; ROBERT R. SCOTT, in the official capacity as Commissioner of the New Hampshire Department of Environmental Services,

Appellants.
_____

## APPELLANTS' MOTION TO STAY ORDER PENDING APPEAL

Appellants Robert Quinn, Commissioner of the New Hampshire Department of Safety ("NHDOS"), and Robert Scott, Commissioner of the New Hampshire Department of Environmental Services ("NHDES") (collectively, the "Commissioners"), respectfully request this Court stay the January 27, 2026 Order of the District Court granting Appellee's motion for a preliminary injunction (the "Order") (ECF-35) (McCafferty, J.) (attached hereto) pursuant to Fed. R. App. Proc. 8(a)(2).

## PRELIMINARY STATEMENT

This case is a private contract action masquerading as a Clean Air Act ("CAA") citizen suit.  The Appellee, Gordon-Darby Holdings, Inc., the parent company of a subsidiary that had a service contract with NHDOS until NHDOS lawfully terminated it for convenience, brought a CAA citizen suit attempting to force the Commissioners to keep in place a vehicle emission inspection and maintenance ("I/M") program that the State of New Hampshire has legislatively repealed and sought approval from the Environmental Protection Agency ("EPA") to discontinue.  The speculative hope seems to have been that a judicially-forced continuation of the state I/M program would require New Hampshire to renew its contract with Appellee's subsidiary thereby redressing Appellee's private economic harm.  That hope has not, and likely will never, come to pass.

The Commissioners advanced strong arguments before the District Court that Appellee lacked standing under the CAA to do this and presented uncontested evidence to the District Court that the New Hampshire I/M program is no longer needed due to air quality improvements since 2004. Despite this, the District Court granted the Appellee extraordinary injunctive relief that, as far as undersigned counsel is aware, no other District Court has ever granted under the CAA:  A mandatory preliminary injunction requiring the Commissioners to continue to implement and enforce state laws that the New Hampshire legislature has plainly

1

repealed and no longer authorize the Commissioners to implement and enforce.

Such an extraordinary injunction, designed solely to try to bring about the cessation of private economic harm to a corporate third-party, is beyond the authority of a District Court to enter under the CAA, blatantly commandeers state officials to implement a federal regulatory program, improperly seeks to manage how those state officials may speak to the very public that employs them, and has (and will continue to) subject the citizens of New Hampshire to substantial confusion about their legal rights and a potential raft of unconstitutional seizures if New Hampshire police are federally forced to stop motorists with expired vehicle inspection stickers and prosecute them not under any existing state law but on the strength of a single Federal District Court's *preliminary* injunction order.

The District Court's preliminary injunction order is terminally flawed and should be stayed pending the outcome of this appeal.

### BACKGROUND

New Hampshire's CAA state implementation plan ("SIP") includes an I/M program. New Hampshire implemented its I/M program through annual vehicle inspections enforced through police traffic stops. RSA 266:1 (repealed); RSA 266:5 (repealed). The Appellee's subsidiary provided a computer-based system that allowed inspection stations around the State to collect and report I/M program data and issue inspection stickers. ECF-1 at 38. The State contract that permitted

Appellee's subsidiary to provide this service in New Hampshire contained a termination for convenience provision. *Id.* This State contract had been approved and extended by the Governor and Executive Council as required under state law. *Id.*; RSA 4:15.

On June 27, 2025, the State of New Hampshire approved repealing the statutory authority to implement and enforce its I/M program effective January 31, 2026. 2025 N.H. Laws §§141:244-141:256 ("HB2").[1]

On September 16, 2025, as a result of the repeal, NHDOS sent Appellee's subsidiary a notice terminating the contract between it and the subsidiary for convenience. The notice explained that the New Hampshire legislature had eliminated the I/M program effective January 31, 2026. ECF-1 at 38.

On October 7, 2025, Appellee filed a 60-day CAA citizen suit notice. ECF-1 at 17-24.

On December 8, 2025, Appellee filed this CAA citizen suit alleging that the Commissioners had violated the CAA by failing to maintain a contracted program vendor and by communicating the legislative repeal of New Hampshire's I/M

---

[1] Section 141:253 of HB2 repealed RSA 266:1, which mandated annual vehicle inspections and display of inspection stickers, and RSA 266:5, which authorized traffic tickets and other penalties for noncompliance with inspection requirements. HB2 further repealed R.S.A. 266:59-b, which authorized emissions testing (but not mandatory inspections), effective September 31, 2026. *Id.*

program to the people of New Hampshire. ECF-1, ¶¶46-47, 49-50.

On December 9, 2025, Appellee filed an expedited motion for preliminary injunction. ECF-10.

On December 23, 2025, Appellants filed a motion to dismiss for lack of standing and for filing a CAA citizen suit before a violation of law had actually occurred, 42 U.S.C. §7604(b)(1)(A).  ECF-20-1 at 6.

On December 24, 2025, New Hampshire petitioned the EPA to amend the SIP to discontinue its I/M program pursuant to 42 U.S.C. §§7410(l) and 7506(a) based upon air quality improvements since 2004.

On December 31, 2025, Appellee moved to extend the deadline to respond to the Commissioners' motion to dismiss for lack of standing and non-compliance with the 60-day citizen suit notice provision until after Appellee's motion for preliminary injunction was resolved. ECF-23.  That same day, the Commissioners objected. ECF-24.  On January 5, 2026, the District Court granted Appellee's motion in an endorsed order.

On January 22, 2026, the District Court held a preliminary injunction hearing.

On January 27, 2026, the District Court issued Appellee a preliminary injunction order. The preliminary injunction order in pertinent part mandated Appellants "to take all steps necessary to resume and ensure the continued

4

implementation and enforcement of" the I/M program.  ECF-35 at 43-44.

On February 10, 2026, the Commissioners filed their notice of appeal (ECF-37) and a motion to stay the District Court's preliminary injunction order (ECF-39), which the District Court denied on February 25, 2026. ECF-49.  On March 13, 2026, Appellees filed a contempt motion.  ECF-50.

### Standard of Decision

To secure the requested stay, Appellants must show: (1) a strong likelihood of appellate success; (2) irreparable injury absent a stay; (3) no substantial injury to the Plaintiff, and; (4) that the stay is in the public interest. *New Jersey v. Trump*, 131 F.4th 27, 34-35 (1st Cir. 2025) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)). When reviewing a District Court's issuance of a preliminary injunction, this Court reviews legal questions *de novo*, findings of fact for clear error, and the balancing of the equities for an abuse of discretion. *Grant v. Trial Ct.*, 137 F.4th 1, 4 (1st Cir. 2025).

### Argument

### I.   THE COMMISSIONERS ARE LIKELY TO SUCCEED ON APPEAL.

A. <u>Appellee Lacks Standing to Try to Remedy Private Contractual Harm Through a CAA Citizen Suit.</u>

"Once the EPA has approved a SIP, it becomes enforceable as part of the CAA." *Conservation Law Found., Inc. v. Acad. Express*, LLC, 129 F.4th 78, 83 (1st Cir. 2025).  "Private citizens have a role in this enforcement process by way of

a citizen-suit provision, which enables citizen plaintiffs to seek penalties (payable to the U.S. government) for each day of an ongoing or repeated SIP violation." *Id.* "Though the CAA creates a private right of action, any citizen suing under these provisions must demonstrate constitutional standing, including an injury in connection with the alleged CAA violation." *Id.*

Article III standing requires (1) a "concrete and particularized" injury (2) "fairly traceable" to the challenged action of the defendant, which is (3) "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  "An injury is concrete if it actually exists and particularized if it affects the plaintiff in a personal and individual way.'" *Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 84 (1st Cir. 2023) (cleaned up). "The causation prong requires that the plaintiff's injury be fairly traceable to the defendant's conduct, rather than the result of independent action by some other party not before the court." *Id.* (cleaned up).  "Finally, the redressability prong requires that the plaintiff request relief that is likely to remedy their injury." *Id.*

Appellee is not likely to succeed on appeal for several reasons related to its standing.  *First*, the Commissioners moved to dismiss the complaint on the ground that it failed to plausibly allege standing, and the District Court declined to resolve it before reaching the merits of Appellee's preliminary injunction motion. Whether "certain facts establish standing is a question of law."  *Wilson v. HSBC*

6

*Mortg. Servs., Inc.*, 744 F.3d 1, 8 (1st Cir. 2014). This Court has stated in no uncertain terms that "[i]f the plaintiff fails at the pleading stage to allege facts demonstrating each element of standing, 'there is no case or controversy for the federal court to resolve.'" *Wiener*, 86 F.4th at 84 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).   United States Supreme Court precedent reinforces this requirement.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (internal quotations omitted). *See also Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (finding federal courts required to address objections to their Article III jurisdiction before adjudicating other issues) (citing *Steel Co.*, 523 U.S. at 94-95).

The District Court openly defied this well-settled precedent stating: "Regardless of whether the complaint plausibly alleges standing, the evidence of monetary harm to Gordon-Darby discussed above was provided in support of Gordon-Darby's preliminary injunction motion, is uncontested by the Commissioners, and establishes a substantial likelihood of injury in fact." [2] ECF-35

---

[2] The District Court misconstrued the Commissioners' facial (legal) challenge to standing, which accepted the alleged facts as true and inferred economic harm (ECF-20-1 at 6), with a factual challenge. *See Valentín v. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (distinguishing facial and factual standing challenges).

at 16. United States Supreme Court precedent, and this Court's precedent, do not allow a District Court to proceed in this way.

*Second*, the Order does not identify any "invasion of a legally protected interest" of Appellee that can provide the requisite injury-in-fact to establish standing.  *Lujan*, 504 U.S. at 560. The Order finds Appellee's economic harm "flows from New Hampshire exercising its contractual rights" (ECF-35 at 14, 36) but finds Appellee does not have a "a plausible claim to relief for breach of [either] the express terms of the contract" or "the implied covenant of good faith and fair dealing." *Id.* at 36.   With no legally protected interest under the Contract and no other source of harm alleged,[3] Appellee failed to plead an injury-in-fact necessary to establish standing.

*Third,* the harm to Appellee cannot be fairly traced to any challenged conduct of the Commissioners, who did not (and could not) repeal their own authority to implement and enforce the program. *See Lujan*, 504 U.S. at 560 (requiring for standing purposes that injury be fairly traceable to the challenged action of the defendant, not the result of independent action by some third party not before the court).

*Fourth*, Appellee did not make a substantial showing of likely

---

[3] Appellee, a for-profit corporation, does not allege organizational standing or claim environmental harm or economic harm to itself arising from unregulated vehicle emissions.

redressability.  Appellee's subsidiary's injury flows from NHDOS's decision to terminate the contract between it and Appellee's subsidiary for convenience after the New Hampshire legislature repealed the state I/M program laws. The District Court's preliminary injunction order cannot require NHDOS to re-contract with Appellee's subsidiary, even if the repealed state laws somehow remain in place, particularly given that, under state law, any new contract would have to go through a state procurement process and ultimately be approved by New Hampshire's Governor and Executive Council.

*Fifth*, the CAA does not authorize citizen suits to remediate or vindicate private contractual harm. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16-18 (1981).  Under the CAA, a person may commence a civil action against a state official alleging him to have violated "an emission standard or limitation under" the CAA.[4] 42 U.S.C. §7604(a)(1)(A). District Courts "shall have jurisdiction . . . to enforce such an emission standard or limitation . . . and to apply any appropriate civil penalties." 42 U.S.C. §7604(a). No provision of 42 U.S.C. §7604(a) permits a District Court to require a state official to administer to a repealed State law, let alone enter into a new contract

---

[4] "Emission standard or limitation" is defined to include any "condition or requirement under an applicable [SIP] "relating to" an I/M program. 42 U.S.C. § 7604(f)(3). As discussed *infra* at Section I.B, the SIP does not include a condition or requirement mandating the State's specific performance of the Contract.

with a specific private third-party to restore a private contractual relationship that existed to further those repealed State laws.  In short, Appellee's subsidiary's private contractual harm is not redressable by a CAA citizen suit.

*Sixth*, there is no state law in effect regarding the I/M Program for the Commissioners to execute.  The SIP is an implementation plan; it is not a federal substitute for state law that somehow converts state officials into federal agents when the underlying state law is repealed.  As the Commissioners argued below, the Tenth Amendment would prevent the federal government from commandeering state officials in this way. ECF-10-1 at 8-9; ECF-22 at 6-7. *See also Printz v. United States*, 521 U.S. 898, 933 (1997) ("The Federal Government may not compel the States to enact or administer a federal regulatory program.") (citation omitted). The District Court did not reference these arguments in its preliminary injunction order.  However, when it denied the Commissioner's motion for a stay it declared that their authority to implement and enforce an I/M program remained because:

> The portions of HB2 that purport to repeal or amend the I/M program as contained in New Hampshire's SIP are without effect unless and until the EPA approves an amendment discontinuing the I/M program.

ECF-49 at 17.[5]  In other words, the District Court now seems to believe that the

---

[5] This declaration, which is not contained in the preliminary injunction order, appears to improperly issue final declaratory judgment relief absent clear notice to

Supremacy Clause of the United States Constitution is capable of preventing a

State from repealing a state law through its own legislative process.[6]

The Supremacy Clause, however, says no such thing and does not operate in

this way.  The Supremacy Clause "specifies that federal law is supreme in case of a

conflict with state law." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018).  In this case,

the repeal of state law does not conflict with any federal law; it simply puts New

Hampshire out of compliance with federal law.  Federal law therefore authorizes

certain remedies to try to encourage compliance.

The District Court's decision in *Delaware Valley Citizens' Council for Clean

Air v. Pennsylvania,* 533 F. Supp. 869, 879 (E.D. Pa. 1982), is illustrative on this

point.  In that case, the District Court held that a state law which prohibited the

State's operation of an I/M program could not be declared unconstitutional because

the Tenth Amendment and principles of federalism limit federal authority to

require states "to establish and fund I/M programs . . ." *Id.*  It explained that State

laws which prohibit or abrogate the authority for an I/M program do not "conflict"

---

the parties of the Court's intent to adjudicate and decide the merits of Appellee's request for a similar declaratory judgment. ECF-1 at 14; *See Sanchez v. Esso Std. Oil Co.*, 572 F.3d 1, 19 (1st Cir. 2009) (citing Fed. R. Civ. P. 65(a)(2)).

[6] The Commissioners who are bound by the preliminary injunction order (and now facing a contempt motion below citing to this new declaration) are unfairly prejudiced by the District Court's ever-changing articulation of what the preliminary injunction has done and requires of them.

with federal law because federal law cannot "impair essential attributes of state sovereignty." *Id.*at 878 (citing *National League of Cities v. Usery*, 426 U.S. 833 (1976)).  The District Court's preliminary injunction order in this case, however, disregards the inability of federal law to require the Commissioners (or the State for that matter)[7] to implement and enforce an I/M program unauthorized by State law.  Further, in the absence of authority to implement an I/M program, any contract to implement the program would be *ultra vires*. The District Court's preliminary injunction order is consequently ineffective to redress Appellee's private economic losses.

*Seventh*, even if the New Hampshire legislature restored the I/M program, the Commissioners would still lack authority to reinstate the contract with Appellee's subsidiary.  As the Commissioners explained below, citing to RSA 4:15 and the record, which reflected that the Contract had previously been approved and extended by the Governor and Executive Council (ECF-20-1 at 9, n. 3 (citing ECF-1 at 38)), any renewal of the Contract would require similar approval.  The preliminary injunction order acknowledges that a <u>new</u> vendor contract would

---

[7] An approved SIP "becomes enforceable as part of the CAA," *Conservation Law Found.*, 129 F.4th at 83, and remains in effect unless and until EPA approves a revision thereto, *G.M. v. U.S.*, 496 U.S. 530, 540 (1990), but the SIP does not incorporate State statutory authority for its implementation and enforcement and therefore provides no independent source of such authority. *See* ECF-39 at 5-6.

require such approval (ECF-35 at 19 (citing RSA 4:15)) and tacitly recognizes that reinstatement of the Contract would require similar approval. *Compare id.* at 20, n.8 (noting that Appellants had not argued that they would not "seek to reinstate" the Contract (emphasis supplied), with *id.* at 18-20 (finding it "likely that the state" (not Appellants) would elect to reinstate the Contract).

The District Court addressed Appellants' arguments that reinstatement of the contract requires Executive Council approval for the first time when it denied the stay, finding that the Commissioners did not require Executive Council approval to reinstate it (ECF-49 at 15, n.10; 17-18) because: (a) NHDOS had issued the September 16, 2025 termination notice; and (b) the Contract does not involve any payments from the public treasury. ECF-49 at 15, n.10.[8]

The District Court is once again incorrect for at least two reasons. First, the New Hampshire legislature eliminated state authority for the I/M program (the very purpose of the Contract) effective January 31, 2026. ECF-1 at 38. Appellants did not require Executive Council approval to terminate the contract effective January 31, 2026. *Id.* Second, the fees which Appellee's subsidiary was authorized to charge State-licensed inspections stations under the contract as the

---

[8] In denying the stay, the Court also incorrectly concludes that "NHDOS unilaterally extended" the contract's termination date in an effort to comply with the Order. ECF-49 at 15-16, n.10. NHDOS instead sought Executive Council "retroactive approval of an extension" in an effort to immediately comply with the Order. ECF-39 at 7-8.

State's I/M program vendor[9] (ECF-28 at 5) were ultimately paid by New Hampshire motorists as the cost of obtaining mandatory annual state inspection stickers. Even absent a direct appropriation,[10] the contract "otherwise" provided money to a private contractor to help "carry on the work" of State agencies and thus required Executive Council approval for the State to enter, amend, or extend it, under existing State law.[11] RSA 4:15; ECF-1 at 38.

*Sixth*, CAA citizen suits may be brought against a State in its "regulatory capacity." *American Lung Ass'n v. Kean*, 871 F.2d 319, 324-325 (6th Cir. 1989). The CAA does not, however, regulate states in their sovereign legislative, procurement,[12] or police power capacities. The injunction at issue thus improperly

---

[9] The Contract authorized Appellee's subsidiary "to invoice the participating Inspection Stations … at fixed pricing/rates" which constituted "Contract payments." ECF-22-3 at 68.

[10] The State necessarily made appropriations for the 8 dedicated full-time State Troopers who enforced the I/M program (ECF-10-3 at 19), and expended resources licensing and regulating inspection stations and certified mechanics to conduct inspections under the program. ECF-1, ¶ 36 (citing N.H. Admin. Code Saf-C 3205).

[11] Further, pursuant to the Governor and Executive Council's Manual of Procedures, authorized by RSA 21-I:14, any amendment of a contract that had been approved by the Executive Council requires Executive Council approval, and unless otherwise specified in the MOP, "current practices" apply regarding which transactions require Executive Council approval. MOP 150, §§V.B.1 & VIII, available at https://www.das.nh.gov/mop/Documents/MOP/2026-03-04_MOP_150.pdf.

[12] Nor does the SIP itself incorporate any State procurement rules. ECF-39 at 5-6 (citing 40 C.F.R. Part 52 Subpart EE).

attempts to direct otherwise unauthorized State procurement, legislative and police power decisions in violation of the State's sovereignty.

In short, Appellee lacks standing. The complaint fails to plausibly allege standing, and the District Court erred in entering a preliminary injunction prior to resolving that challenge. Appellee's harm is also not likely to be redressed through a CAA citizen suit because such a suit cannot (and is not likely to) result in a new contract with Appellee's subsidiary. Where, as here, the relief sought cannot remedy the injury alleged, a plaintiff fails to satisfy the "very essence" of the redressability requirement for standing. *Steel Co.*, 523 U.S. at 107.

B. <u>The District Court Erred in Finding the Mandatory, Sixty-Day Notice Requirement Met.</u>

The District Court's preliminary injunction order erroneously found that statutory jurisdiction attached at the time a complaint was filed alleging that "violations are likely to occur in the future." ECF-35 at 26. This conclusion is incorrect and renders superfluous the 60-day citizen suit notice requirement. 42 U.S.C. §7604(b)(1)(A).

Citizen suit relief is only available for an "ongoing or repeated SIP violation." *Conservation Law Found.*, 129 F.4th at 83. Neither *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 69 (1987), nor any other case discussed in the District Court's preliminary injunction order (ECF-35 at 26-29), support the proposition that the CAA empowers district courts "to stop

15

impending and certain illegality before it occurs." ECF-49 at 19. This error of law renders the injunction invalid.

The District Court attempts to sidestep this issue by finding the Commissioners in violation of the CAA before January 31, 2026, but they were not. The termination of Appellee's subsidiary's contract for convenience was not a violation of the CAA. While it is true that the I/M program as a practical matter requires a vendor, neither the SIP nor the CAA contain any legal requirement to retain one (much less a particular vendor). ECF-39 at 5-6 (citing 40 C.F.R. Part 52 Subpart EE). Furthermore, the notion that the Commissioners were "in violation" of the CAA before January 31, 2026, by "presently informing the citizenry of New Hampshire that motor vehicle inspections are no longer required after January 31" is misplaced. ECF-35 at 29. The Commissioners did nothing more than inform the public of the truth about a matter of public concern. Such speech does not "misstate[] the requirements" of the SIP as the District Court's preliminary injunction order found, (ECF-35 at 29), nor would such speech be actionable under the CAA.

The District Court's preliminary injunction order further erred in finding that simply "misstating the requirements" of the SIP violates 40 C.F.R. §51.368(a), which contains a requirement that the SIP "include a plan for informing the public" on "the requirements of the Federal and State law … and the requirements of the

16

I/M program." ECF-35 at 29. This EPA rule does not create any enforceable restriction on the speech of Appellants. 40 C.F.R. §51.368(a) sets out required components for the SIP; it does not regulate the extent of communications with the public by state officials, much less speech regarding state statutes which authorize, but are not incorporated into, the SIP. Such speech does not alter the SIP's public outreach plan.

The plain fact is that Appellee did not file this citizen suit in accordance with 42 U.S.C. §7604(b)(1)(A), which is a mandatory condition precedent to proceeding with a CAA citizen suit. *Cf. Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 72 (1st Cir. 2021) (finding sixty-day notice provision for filing citizen suit in Clean Water Act to be a mandatory claims-processing rule).

## II.   A STAY WILL ABATE ONGOING AND IRREPARABLE INJURY TO THE COMMISSIONERS AND THE CITIZENS OF NEW HAMPSHIRE

The District Court's preliminary injunction order conducts no meaningful analysis of the irreparable harm it has inflicted on the Commissioners and has (and will continue to) inflict on the citizens of New Hampshire. *See* ECF-35 at 41 (stating only that the Commissioners will "suffer little harm if a preliminary injunction is granted; a preliminary injunction would simply maintain the status quo prior to HB2's enactment").

The duly elected representatives of the State of New Hampshire have

17

repealed the state law that authorizes the Commissioners to implement and enforce the I/M program. Neither the Supremacy Clause nor the CAA can constitutionally prohibit that state statutory repeal. The Commissioners have acknowledged that this state law repeal places New Hampshire out of compliance with federal law, but has pointed out that Congress has provided for appropriate remedies and penalties to attempt to regain compliance. A remedy Congress has not authorized, however, is specific performance of repealed state law. Such a remedy would unconstitutionally conscript the Commissioners into agents of the federal District Court in violation of the Tenth Amendment and the anti-commandeering doctrine.

The District Court's preliminary injunction order also irreparably harms the Commissioners by purporting to regulate what they may or may not say to the citizens of New Hampshire, thereby chilling their ability to meet their state public duties and obligations for fear of being hauled into the District Court on a contempt motion. The order penalizes them for doing nothing more than informing the public of the truth about a matter of public concern—the legislature's repeal of the state I/M program. Such speech does not "misstate[] the requirements" of the SIP, (ECF-35 at 29), nor is such speech actionable under the CAA.

The District Court's preliminary injunction also seeks to revive repealed state law or otherwise declare state legislative action to repeal it invalid. This

18

action has created substantial public confusion about the state of law and makes it nearly impossible for citizens to understand how to conform their conduct to the law.  Harm to a State's "sovereign interests and public policies" is irreparable. *California v. Trump*, 786 F. Supp. 3d 359, 392 (D. Mass. 2025).

## III.    ISSUANCE OF A STAY WILL NOT SUBSTANTIALLY HARM APPELLEE.

In denying a stay, the District Court erred by failing to address equitable considerations offered by the Commissioners regarding Appellee's claimed economic losses (ECF-22 at 11-12), including that equity favors holding parties to their contracts, *see Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F. Supp. 497, 501 (N.D. Tx. 1984), that the performance of a bargained for contract does not impose any hardship recognized by equity, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 612 F. Supp. 3d 563, 598 (E.D. Va. 2020), and that lost profits merit "little equitable consideration."  *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988).

In any event, the for-profit corporate-parent Appellee has neither organizational standing nor will suffer environmental harm or direct economic harm arising from unregulated vehicle emissions.  As the District Court found, Appellee's harm arises from NHDOS's termination of the Contract for convenience.  ECF-35 at 36.  Because the Contract has already been terminated

and the entire I/M program has been repealed, a stay pending appeal cannot further injure Appellee, substantially or otherwise.

## IV.    THE DISTRICT COURT'S ORDER VINDICATES A PRIVATE INTEREST TO THE DETRIMENT OF THE OVERRIDING PUBLIC INTEREST.

The District Court abused its discretion when it tipped the scales in favor of a preliminary injunction based upon: (a) private economic harm to Appellee's subsidiary not recognized by the CAA; (b) the public interest in enforcing the CAA *and achieving air quality standards*; and (c) the public interest in continuing vehicle safety inspections (unrelated to emissions) "that keeps unsafe vehicles off the roads." ECF-35 at 41.

First, the finding that the injunction would assist in achieving air quality standards overlooks the undisputed evidence that NHDES's pending SIP revision request to EPA includes a required technical demonstration showing that discontinuing the I/M program will not interfere with attainment of air quality standards in New Hampshire or any other state in the so-called "Northeast Ozone Transport Region." ECF-22-2, ¶¶42-45; ECF-28 at 12.

Second, the CAA does not regulate vehicle safety requirements unrelated to emissions (*see* ECF-39 at 4), and the District Court has acknowledged as much. While the District Court's order incorrectly determined that the SIP incorporates and requires both federal emissions and State vehicle safety checks (ECF-35 at 7),

20

the District Court subsequently indicated that it did not order the Commissioners to continue administering components of the I/M program that are not contained in New Hampshire's SIP. ECF-49 at 20. As such, the injunction cannot serve a public interest in promoting vehicle safety that is not required under the SIP, the CAA, or the injunction itself.

All that remains is private economic loss to Appellee's subsidiary, which cannot be remedied via a citizen suit. To prevent such private losses, the District Court's order directs two State executive branch officials to implement and enforce a program which the public's elected representatives chose to repeal for the benefit of the public and which is now unauthorized by state or federal law.

Enforcement efforts in particular will raise complicated constitutional questions likely to adversely impact the citizens of the State of New Hampshire. For example, does a New Hampshire police officer have reasonable suspicion today to stop a vehicle with an expired New Hampshire inspection sticker? No operative state law makes that a violation. The District Court seems to claim either that federal law now makes that a violation through the SIP or that the Supremacy Clause has prevented the repeal of that state law such that it remains in effect. If that conduct is now a violation of federal law, it is not clear how New Hampshire police have jurisdiction to enforce it and prosecute violations of it. If the Supremacy Clause has not prevented the repeal of state law, then pulling people

21

over for an expired inspection sticker will result in the widespread violation of the federal and state constitutional rights of the citizens of New Hampshire. A federal District Court preliminary injunction that has the potential to be so pervasively disruptive across a State is manifestly not in the public interest and the balance of the equities in this case certainly does not favor it.

While the action of the New Hampshire legislature may have placed the State in violation of the CAA and may open the State to appropriate enforcement under 42 U.S.C. §7604(a), the unprecedented preliminary injunction the District Court issued in this case is unlikely to survive appellate review and will inflict much more harm on the Commissioners and the people of New Hampshire than it is capable of remedying for the Appellee.

Accordingly, a stay of the District Court's preliminary injunction order pending appeal is warranted.

WHEREFORE, Appellants respectfully request that this Honorable Court issue an order staying the District Court's preliminary injunction order until the merits of this appeal are resolved.

22

Respectfully submitted,

JOHN M. FORMELLA
ATTORNEY GENERAL

March 19, 2026                    /s/ Mark L. Lucas
                                 Mark L. Lucas, Bar # 1222214
                                 Joshua C. Harrison, Bar #1194556
                                 Assistant Attorneys General
                                 Environmental Protection Bureau
                                 Office of the Attorney General
                                 New Hampshire Department of Justice
                                 1 Granite Place South
                                 Concord, New Hampshire 03301
                                 (603) 271-3679
                                 Mark.L.Lucas@doj.nh.gov
                                 Joshua.C.Harrison@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

                                 /s/ Joshua Harrison
                                 Joshua Harrison, Bar #1194556

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing motion meets the type-volume limitation and contains 5,200 words in compliance with Federal Rule of Appellate Procedure 27(d)(2)(A), based on the word count of the word-processing system used to prepare this motion.

                                 /s/ Mark L. Lucas
                                 Mark L. Lucas, Bar # 1222214

23