# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

GORDON-DARBY HOLDINGS, INC.,

*Plaintiff-Appellee*,

v.

ROBERT L. QUINN, in the official capacity as Commissioner of the New Hampshire Department of Safety, et al.,

*Defendants-Appellants*.

No. 26-1209

## GORDON-DARBY HOLDINGS, INC.'S RESPONSE OPPOSING APPELLANTS' MOTION TO STAY ORDER PENDING APPEAL

Amy Manzelli
Andrian Lee
BCM Environmental &
Land Law, PLLC

Allison D. Wood
Andrew D. Knudsen
Kirsten M. Bahnson
McGuireWoods LLP

Dated: March 26, 2026

*Counsel for Plaintiff-Appellee*
*Gordon-Darby Holdings, Inc.*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

STANDARD OF REVIEW .................................................................................... 3

ARGUMENT ......................................................................................................... 3

    I.  Appellants' Delay Warrants Denial of This Motion. ........................... 3

    II.  Appellants Are Unlikely to Succeed on the Merits. ............................ 4

        A.      The district court did not err in finding that Gordon-Darby showed a substantial likelihood of standing. .............................................. 5

        B.      The district court did not err in finding Gordon-Darby met the CAA's pre-suit notice requirement. ......................................................... 16

    III. Appellants Have Not Met Their Burden to Establish Irreparable Harm from Leaving the Order in Place During This Appeal, Whereas Gordon-Darby Will Suffer from a Stay. ........................................................................ 18

    IV. The Public Interest Heavily Favors Denying the Stay. ....................... 19

CONCLUSION ................................................................................................... 22

i

**INTRODUCTION**

This case concerns New Hampshire's attempt to illegally terminate its Congressionally mandated vehicle inspection and maintenance ("I//M") program without obtaining the necessary approvals from the U.S. Environmental Protection Agency ("EPA"). The Clean Air Act ("CAA") explicitly requires that vehicles in certain areas of New Hampshire be subject to an I/M program. 42 U.S.C. § 7511c(b)(1)(A). Under the CAA's cooperative federalism framework, New Hampshire has adopted an I/M program into its EPA-approved "state implementation plan" ("SIP"). By virtue of its approval and inclusion in the SIP, New Hampshire's I/M program is incorporated into federal law and is federally enforceable. Appellants admit that despite the State's passage of legislation known as HB2 repealing the I/M program, that program remains part of its federally enforceable SIP. Appellants also admit that the State's failure to implement the I/M program violates the CAA. *See, e.g.*, Stay Mot. 11, 22; ECF-46-1 ¶ 32.[1]

Faced with this admitted violation, the district court reasonably exercised its discretion to grant Gordon-Darby Holdings, Inc.'s ("Gordon-Darby") motion for a preliminary injunction requiring Appellants to continue implementing the I/M program as codified in the SIP. ECF-35 ("Order"). There is nothing "extraordinary" about this Order. Stay Mot. 1. The district court's decision aligns

---

[1] ECF cites are to the district court's docket.

with numerous other courts finding that a State's attempt to repeal or simply not implement its SIP's I/M requirements without EPA approval violated the CAA and was actionable under the statute's "citizen suit" provision. *Sweat v. Hull*, 200 F. Supp. 2d 1162 (D. Ariz. 2001); *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705 (E.D. Penn. 2002); *Citizens for Penn.'s Future v. Mallory*, No. 02-cv-798, 2002 WL 31845880 (E.D. Penn. Dec. 18, 2002); *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920 (W.D. Ky. 2004).

Appellants now ask this Court to stay the Order so that New Hampshire may continue its admitted violation of the CAA without consequence.[2] Appellants have not carried their heavy burden to justify a stay. Appellants' delay in filing this Motion alone warrants denying their request. Moreover, Appellants have not shown that the district court abused its discretion in its carefully reasoned decision granting the Order. Appellants are unlikely to succeed on the merits of their appeal, as their standing and notice arguments are unsupported by the case law, misconstrue the Order, or were not raised below. Appellants have not shown they will suffer irreparable harm from the Order, while Gordon-Darby would be harmed by a stay. Finally, the public interest favors preserving the Order to avoid public confusion, ensure compliance with the CAA, and preserve the I/M program's

---

[2] Although the Order remains in effect, Appellants proceeded to suspend the I/M program anyway and currently are not complying with the Order. Gordon-Darby has moved to enforce the Order and hold Appellants in contempt. ECF-50.

environmental and public safety benefits. Accordingly, the Court should deny Appellants' Motion.

## STANDARD OF REVIEW

Because a stay pending appeal is "an intrusion into the ordinary processes of administration and judicial review," Appellants bear a heavy burden. *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). To secure a stay, Appellants must: (1) "make a 'strong showing that [they are] likely to succeed on the merits'"; (2) show they will be irreparably injured absent a stay; (3) show issuance of a stay will not substantially injure the other parties; and (4) show a stay serves the public interest. *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) (quoting *Nken*, 556 U.S. at 434) (alteration in original). The first two factors are the "most critical." *Id.* at 66. This Court reviews the district court's issuance of a preliminary injunction for abuse of discretion, reviewing findings of fact for clear error and legal questions *de novo*. *Ryan v. ICE*, 974 F.3d 9, 18 (1st Cir. 2020).

## ARGUMENT

### I.    Appellants' Delay Warrants Denial of This Motion.

At the outset, the Court should deny Appellants' request for a stay due to their unreasonable delay in filing this Motion. Under this Court's rules, "[m]otions for stay, or other emergency relief, may be denied for failure to present promptly." 1st Cir. R. 27.0(b). The district court issued the Order on January 27, 2026, four

days before the State's termination of the I/M program was scheduled to take effect on January 31. ECF-35. But Appellants did not even file this appeal until February 10, 2026, two weeks later. ECF-37. Likewise, the district court denied Appellants' motion to stay the Order pending appeal on February 25, 2026. ECF-49. Yet Appellants waited until March 19, 2026, before moving for a stay in this Court—more than three weeks after the district court denied a stay, more than a month after filing this appeal, and after the Court established a briefing schedule for this case.

This delay alone warrants denial of a stay. If the Order truly presented irreparable harm to Appellants, they could have appealed it immediately and moved for a stay in this Court before the I/M program's repeal was set to take effect. *See* Fed. R. App. P. 8(a)(2)(A)(i). Instead, Appellants waited two weeks to appeal—and even then, they sat on this Motion for another three weeks after the district court denied a stay. Given this lack of urgency, Appellants cannot plausibly claim the Order causes them irreparable harm requiring emergency relief. The Court should deny Appellants' Motion and allow their appeal of the Order to proceed in the normal course.

 II.    **Appellants Are Unlikely to Succeed on the Merits.**

Even if the Court considers Appellants' Motion, it should deny the stay because Appellants have not carried their burden under *Nken*. In particular, Appellants are unlikely to prevail on the merits of their appeal of the Order.

4

**A. The district court did not err in finding that Gordon-Darby showed a substantial likelihood of standing.**

**1. The district court evaluated Gordon-Darby's standing under the proper standard.**

Contrary to Appellants' contention, the district court did assess its jurisdiction "as a threshold matter" as Article III requires. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); Stay Mot. 7. Appellants complain that the court declined to resolve their motion to dismiss under Federal Rule of Civil Procedure 12(b) before ruling on Gordon-Darby's preliminary injunction motion. Stay Mot. 6-8. But the district court did not refuse to "address objections to [its] Article III jurisdiction before adjudicating other issues." *Id.* at 7. It simply addressed those objections—which Appellants incorporated in full in their brief opposing a preliminary injunction, ECF-22 at 3—under the more demanding standard of review this Court requires at the preliminary injunction stage.

While standing is required throughout the litigation, the standard for establishing it changes as the case progresses. The plaintiff must demonstrate each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the preliminary injunction stage, the plaintiff must establish a substantial likelihood of standing. *Doe v. Trump*, 157 F.4th 36, 47 (1st Cir. 2025); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). The

5

court's evaluation of this standard is not limited to allegations in the complaint and includes any facts set forth in declarations or other "evidence from the preliminary injunction proceedings." *Doe*, 157 F.4th at 47.

The district court properly evaluated Gordon-Darby's standing under the "substantial likelihood" standard instead of the more lenient standard for showing standing at the pleading stage. Appellants were not prejudiced by the court's deferral of their motion to dismiss under Rule 12(b). To the contrary, applying the "substantial likelihood" standard placed a *higher burden* on Gordon-Darby to establish standing. To survive a motion to dismiss, which merely tests the complaint's legal sufficiency, plaintiffs need only present "general factual allegations of injury resulting from the defendant's conduct," which the court must accept as true. *Lujan*, 504 U.S. at 561; *Gargano v. Liberty Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009). But to obtain relief at the preliminary injunction stage, the plaintiff must set forth "specific facts" to show standing "by affidavit or other evidence." *Lujan*, 504 U.S. at 561; *Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 113-14 (2d Cir. 2025). The district court did not err by holding Gordon-Darby to that higher standard.

The court also did not "misconstrue[]" Appellants' legal challenges to Gordon-Darby's standing as factual challenges. Stay Mot. 7 n.2. It simply noted—correctly—that Appellants *chose not to raise* any challenge to the facts Gordon-

6

Darby presented to support its standing and relied solely on the legal arguments from their motion to dismiss. ECF-35 at 15-16 & n.5. The district court considered and rejected those legal arguments, and its conclusions were correct for the reasons discussed below.

**2. The district court reasonably found Gordon-Darby was substantially likely to meet all three prongs of Article III standing.**

Article III standing requires (1) injury in fact, (2) causation, and (3) redressability. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025). The district court correctly rejected Appellants' legal challenges, and it did not err in finding that Gordon-Darby's evidence established facts showing a substantial likelihood of standing. Appellants' Stay Motion omits key aspects of the district court's decision and fails to establish the required "strong showing" that they are likely to succeed in challenging any prong of the standing analysis.

*First*, the district court made detailed findings of fact recognizing both actual and imminent harms to Gordon-Darby. *Contra* Stay Mot. 8. Gordon-Darby's subsidiary was until recently the vendor hired by New Hampshire to administer the I/M program by, *inter alia*, providing inspection-related equipment and supplies to inspection stations. ECF-35 at 8; ECF-10-2 ¶¶ 9-16. The district court found Appellants' actions had already reduced the number of inspections conducted, costing Gordon-Darby approximately $350,000 in revenue. ECF-35 at 14. It also found that Appellants' imminent termination of the I/M program would cost

7

Gordon-Darby approximately $4.1 million in revenue and would likely drive its subsidiary out of business. *Id.* These findings were based on uncontested record evidence and were not clearly erroneous.

Appellants note that as part of its separate analysis of whether Gordon-Darby would be irreparably harmed absent a preliminary injunction, the district court concluded Gordon-Darby likely could not recover money damages from New Hampshire in a suit for breach of its vendor contract. ECF-35 at 36. But whether Gordon-Darby could successfully *recover damages* for its lost revenue is a separate legal question. For standing purposes, the loss of revenue from inspection stations is an "obvious" injury in fact. ECF-35 at 14-15, 16-17 (citing *TransUnionLLC v. Ramirez*, 594 U.S. 413, 425 (2021)).

*Second*, the district court did not err in finding that Gordon-Darby's injuries were caused by the I/M program's elimination. ECF-35 at 17-18. The uncontroverted evidence showed that Appellants' sole reason for terminating Gordon-Darby's vendor contract was because the I/M program was ending. ECF-10-2 ¶ 21. Appellants now argue for the first time that Gordon-Darby's harms are not fairly traceable to them because it was New Hampshire's *legislature,* not Appellants, who decided to eliminate the I/M program. Stay Mot. 8. Appellants waived this argument by failing to raise it below. But in any event, this distinction is untenable. Appellants are the state officials charged with administering and

8

enforcing New Hampshire's I/M program, *see* 10-1 at 9, and by their failure to implement that program despite its continued effectiveness under federal law they are directly responsible for Gordon-Darby's harms.

*Third*, the district court did not err in finding that judicial relief would likely redress Gordon-Darby's harms from the I/M program's termination. ECF-35 at 18-20. Although the CAA and New Hampshire's SIP do not require Appellants to contract with *Gordon-Darby specifically* as the I/M program vendor, the possibility that Appellants might retain some other vendor after being ordered to reinstate the program cannot defeat redressability. *Contra* Stay Mot. 8-9. Article III does not require relief that is "certain" to redress a plaintiff's injury. *Diamond Alt. Energy*, 606 U.S. at 124; *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 110 F.4th 295, 319 (1st Cir. 2024). Instead, "the plaintiff must simply 'show a predictable chain of events' that would *likely* result from judicial relief and redress the plaintiff's injury." *Diamond Alt. Energy*, 606 U.S. at 121 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024)) (emphasis added).

Here, the district court carefully weighed the evidence in the record and found an order requiring Appellants to implement the I/M program would likely result in Gordon-Darby resuming its role as the State's vendor, redressing its

economic harms.[3] The court based its factfinding on evidence including: Gordon-Darby's long history as the State's contractor; the time necessary to conduct the procurement process; Gordon-Darby's status as the only potential vendor with New Hampshire-specific equipment and materials readily available to deploy; and the likely lack of other interested bidders. ECF-35 at 19-20. The district court's assessment of the likely result of its Order was not clearly erroneous.[4]

Finally, Appellants' reliance on *Middlesex County Sewerage Authority v. National Sea Clammers Association* to defeat redressability is misplaced. Stay Mot. 9-10 (citing 453 U.S. 1, 16-18 (1981)). That case addressed whether an environmental statute authorized private remedies for money damages "*apart from the expressly authorized citizen suits*" provided in the statutory scheme. *Middlesex*, 453 U.S. at 17 (emphasis added). Here, Gordon-Darby is pursuing a claim under

---

[3] Gordon-Darby also argued that an order requiring Appellants to implement the I/M program would redress Gordon-Darby's decreased valuation by restoring its ability to bid on *future* opportunities to administer the State's program. ECF 10-1 at 12; ECF-10-2 ¶ 33; ECF-28 at 4; *see CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989). The district court endorsed this separate basis for redressability in its decision denying Appellants' motion to stay. ECF-49 at 14-15.

[4] While Appellants have not yet retained Gordon-Darby (or any other vendor) to administer the I/M program following termination of its previous contract, that fact does not render the district court's finding on the likelihood of redress clearly erroneous. Gordon-Darby is continuing to suffer harm not because the court cannot order meaningful relief, but because Appellants so far have simply *refused to comply* with the Order. *See* ECF-50 (seeking to hold Appellants in contempt). There is no reversible error in failing to "predict that New Hampshire officials would act in knowing violation of federal law." ECF-49 at 18.

the CAA's citizen suit provision and only seeks equitable relief authorized by that provision, not money damages or an order requiring Appellants to "enter into a new contract with a specific private third-party." Stay Mot. 9-10; *see* ECF-1 at 14-15. To the extent Appellants argue CAA citizen suits are only available to plaintiffs alleging environmental injury, they are wrong. While some statutes limit citizen enforcement to plaintiffs with specific interests, the CAA provides a cause of action to "any person," including those claiming economic harm from a CAA violation. 42 U.S.C. § 7604(a); *George E. Warren Corp. v. EPA*, 159 F.3d 616, 621 (D.C. Cir. 1998); *see Bennett v. Spear*, 520 U.S. 154, 164-65 (1997) (discussing analogous citizen suit provision).

### 3. Appellants' remaining redressability arguments were not raised below and lack merit.

Appellants raise two additional legal arguments purportedly showing that the district court cannot order Appellants to take any action that would redress Gordon-Darby's harms from termination of the I/M program. Stay Mot. 10-14. But Appellants waived both arguments by failing to assert them in briefing on the preliminary injunction. *Henderson v. Mass. Bay Transp. Auth.*, 977 F.3d 20, 33 n.14 (1st Cir. 2020) ("An argument not fully developed below is waived.") (cleaned up). And in any event, Appellants are unlikely to prevail on either argument.

*First*, Appellants contend that because New Hampshire has attempted to repeal the state laws underlying its I/M program, courts cannot order Appellants to comply with the State's federally enforceable SIP under the anti-commandeering doctrine outlined in *Printz v. United States* and related cases. Stay Mot. 10-12 (citing 521 U.S. 898 (1997)). But Appellants did not raise this anti-commandeering argument in their briefing on the preliminary injunction, *see* ECF-22, ECF-29, or even in their motion to stay the Order, *see* ECF-39, ECF-47. The only Constitutional argument Appellants raised below was a vague assertion that the Supremacy Clause somehow does not preempt state law that conflicts with federal law. ECF-22 at 5-6. The district court properly rejected this argument, holding that the provisions of HB2 purporting to repeal the I/M program "directly conflict with the requirements of federal law" codified in New Hampshire's SIP and, under black-letter preemption principles, are "without effect unless and until the EPA approves an amendment discontinuing the I/M program."[5] ECF-49 at 16-17.

---

[5] Appellants briefly invoke the Supremacy Clause again in their Stay Motion, arguing that HB2 actually "does not conflict with any federal law" but "simply puts New Hampshire out of compliance with federal law." Stay Mot. 11. This argument makes no sense, and the Court should reject it. Because it is impossible to comply with both federal law (which requires implementation of the I/M program) and HB2 (which repeals the I/M program), the two directly conflict and "the Supremacy Clause requires that [HB2] be given no effect." *New Hampshire v. Ramsey*, 366 F.3d 1, 30 (1st Cir. 2004).

12

Nonetheless, Appellants' anti-commandeering argument is misplaced here because the relief Gordon-Darby seeks would not compel the State to carry out a federal regulatory program. *See Printz*, 521 U.S. at 921. This case seeks to require New Hampshire officials to comply with *New Hampshire's own SIP*, which the State crafted itself and chose to make federally enforceable by submitting it to EPA for approval. Enforcing these requirements within the CAA's cooperative federalism framework does not violate the anti-commandeering doctrine because although the CAA establishes federal regulatory programs with minimum requirements that must be met, it gives each state the choice to either (1) develop and administer its own SIP satisfying the CAA's requirements, or (2) decline to participate and allow EPA to directly administer those programs by promulgating its own federal implementation plan. *Texas v. EPA*, 726 F.3d 180, 196-97 (D.C. Cir. 2013); *Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 175 (D.C. Cir. 2015); *see New York v. United States*, 505 U.S. 144, 166-67 (1992) (affirming constitutionality of statutes that allow states to administer federal programs but provide direct federal administration if state opts out).

Once a state opts to administer one of the CAA's programs through its SIP, however, federal courts may enforce that SIP against the state so long as it remains in effect, even if the state has since changed its mind about implementing that program. *Sweat*, 200 F. Supp. 2d at 1179; *Friends of the Earth v. Carey*, 552 F.2d

13

25, 35-37 (2d Cir. 1977). Indeed, in the specific context of the CAA's I/M provisions, multiple courts have required states to continue implementing the I/M requirements of their applicable SIP—even where the state had repealed the statutes underlying its I/M program. *Sweat*, 200 F. Supp. 2d at 1179; *id.* at 1172 (holding SIP preempted state legislation repealing program); *Ky. Res. Council*, 304 F. Supp. 2d at 928.

The district court decision in *Delaware Valley* is not to the contrary. Stay Mot. 11-12 (discussing *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 533 F. Supp. 869, 879 (E.D. Pa. 1982)). That court only considered whether a state law prohibiting Pennsylvania from operating an I/M program conflicted with the CAA's provisions generally requiring that SIPs "provide for an I/M program where necessary." *Id.* It did not consider whether such a state law would conflict with (and be preempted by) an applicable SIP already adopted by the state and approved by EPA. Moreover, *Delaware Valley* appears to no longer be good law, as two cases in the same district have since held that federal courts *can* compel state officials to implement the I/M requirements codified in Pennsylvania's SIP. *Clean Air Council*, 226 F. Supp. 2d at 725; *Citizens for Penn.'s Future*, 2002 WL 31845880 at *12. Thus, Appellants are unlikely to succeed on their anti-commandeering arguments.

14

*Second*, Appellants argue the district court cannot grant relief redressing Gordon-Darby's harm because Appellants cannot retain an I/M program vendor without the involvement of other State officials not before the court—specifically, the New Hampshire Governor and Executive Council. Stay Mot. 12-14. Again, this argument appears nowhere in Appellants' preliminary injunction briefing and has been waived.

Even if this Court reaches it, however, this argument gets Appellants nowhere. At the outset, Gordon-Darby disputes that New Hampshire law requires the Governor and Executive Council to approve the type of I/M vendor contract envisioned in the State's SIP. But regardless, whether such approval is needed is irrelevant to the redressability analysis, which only requires that judicial relief be "likely" to redress the plaintiff's harm. *Supra* 9; *Diamond Alt. Energy*, 606 U.S. at 124. Even if their approval were required, the involvement of these officials would not make it *unlikely* that the State retains Gordon-Darby as its vendor if the district court orders Appellants to continue implementing the I/M program, given the numerous other facts supporting Gordon-Darby's likely retention. *Supra* 10.

Accordingly, Appellants have not made the necessary "strong showing" that they are likely to succeed in challenging the district court's decision on standing, and the Stay Motion should be denied.

**B. The district court did not err in finding Gordon-Darby met the CAA's pre-suit notice requirement.**

The CAA provides that no person may commence a citizen suit "prior to 60 days after the plaintiff has given notice of the violation" to the required parties. 42 U.S.C. § 7604(b)(1)(A). Appellants do not dispute that Gordon-Darby gave notice to the proper parties, that Gordon-Darby's notice contained all required information, or that Gordon-Darby waited until 60 days after giving notice before filing suit. Instead, they argue that a plaintiff must wait until after "the violation" complained of has occurred before giving notice of intent to sue. Stay Mot. 15-17.

On this question, Appellants mischaracterize the district court's holding. The court did not "sidestep this issue" by finding that Appellants were already in violation of the CAA before New Hampshire's repeal of the I/M program took effect on January 31, 2026. Stay Mot. 16. Appellants' arguments focus only on the district court's *alternative holding*. ECF-35 at 29-30. While Gordon-Darby agrees that Appellants were already in violation prior to January 31, that alternative holding was only a small part of the court's thorough and well-reasoned analysis of the statutory language and applicable case law. ECF-35 at 22-30.

The district court's *primary* holding was that the citizen suit provision does not require a defendant to be presently violating the CAA at the time notice is given or a complaint is filed. ECF-35 at 26. At the preliminary injunction stage, Gordon-Darby could show a likelihood of success on the merits if "there is a

16

substantial likelihood Gordon-Darby will be able to prove at trial that [Appellants] violated the [CAA] on or after the date the complaint is filed or that there is a continuing likelihood the [Appellants] will violate the [CAA]." *Id.* (internal quotations omitted). Appellants do not engage with this holding at all in their Stay Motion. That may be because they recognize the district court's holding is legally sound and supported by the Supreme Court's decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, as well as a host of other decisions before and after *Gwaltney* by this Court, district courts in the First Circuit, and other circuit courts.[6]

In short, Appellants fail to refute the district court's actual rationale for holding that Gordon-Darby is likely to succeed in demonstrating that Appellants are "in violation" of the CAA. As a result, they cannot make the "strong showing" of likely success on this appeal necessary to justify a stay.

---

[6] *See Gwaltney*, 484 U.S. 49, 64 (1987); *Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp.*, 807 F.2d 1089, 1094 (1st Cir. 1986); *P.R. Campers' Ass'n v. P.R. Aqueduct & Sewer Auth.*, 219 F. Supp. 2d 201, 216 (D.P.R. 2002); *Eastman v. Brunswick Coal & Lumber Co.*, No. CIV. 95-255-P-C, 1996 WL 911200, at *4 (D. Me. Apr. 19, 1996); *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171-72 (4th Cir. 1988); *NRDC v. Texaco Refin. & Mktg., Inc.*, 2 F.3d 493, 501 (3d Cir. 1993).

**III.    Appellants Have Not Met Their Burden to Establish Irreparable Harm from Leaving the Order in Place During This Appeal, Whereas Gordon-Darby Will Suffer from a Stay.**

The only "irreparable harm" Appellants claim from the Order is purported harm to New Hampshire's "sovereign interests and public policies" resulting from its inability to carry out HB2's repeal of the I/M program. Stay Mot. 18-19. But the district court correctly found that HB2 conflicts with federal law and is preempted under the Supremacy Clause. *See* ECF-49 at 17. Appellants have no legitimate interest in preserving or carrying out State law that is preempted by federal law. Appellants also object that absent a stay, they will be conscripted to implement federal policy in violation of the anti-commandeering doctrine. Stay Mot. 18. As discussed above, that doctrine is inapplicable where (as here) a citizen suit plaintiff merely seeks to enforce the State's compliance with its own SIP. *See supra* 12-14 (discussing cases). Appellants' failure to identify any cognizable irreparable harm is fatal to their stay request. *See New York v. Trump*, 133 F.4th at 65 (noting likelihood of success and irreparable harm are "most critical" factors).

Conversely, Gordon-Darby will suffer significant harm if this Court stays the Order. The district court found that Gordon-Darby will suffer substantial and irreparable harm if Appellants are allowed to terminate the I/M program, ECF-35 at 32-41, a finding that Appellants have not challenged here. Without the Order in place, Appellants will continue violating the CAA without fear of consequences,

18

subjecting Gordon-Darby to the same harms the district court sought to prevent. *See* ECF-10-2 ¶¶ 33-42 (describing harms from program's termination). Those harms were not negated by the State's termination of Gordon-Darby's previous vendor contract. In particular, Gordon-Darby continues to face injuries from reduced corporate valuation due to the loss of future business opportunities and losses associated with I/M program wind-down. This Court should deny the stay to prevent further irreparable losses to Gordon-Darby.

## IV.    The Public Interest Heavily Favors Denying the Stay.

The public has a strong interest in preserving the continued effectiveness of the Order, which provides public certainty and preserves the environmental and safety benefits of the I/M program. As a general matter, the public interest favors "ensur[ing] compliance with the CAA." *Env't Democracy Project v. Green Sage Mgmt.*, No. 22-cv-3970, 2022 WL 4596616, *4 (N.D. Cal. Aug. 23, 2022). Because Appellants admit that their failure to implement the I/M program violates the CAA, maintaining the Order will benefit the public by discouraging further violations.

Denying the stay will also avoid further confusion to the public about the status of New Hampshire's I/M program. Appellants claim to support this goal, *see* Stay Mot. 18-19, but they ignore that *their own actions*—not the Order—are the source of the "substantial public confusion regarding the requirements and legal status of the I/M program." ECF-49 at 22. Over the past two months alone,

19

Appellants went from promoting the I/M program's illegal termination on January 31; to announcing the program would continue operating with an extended compliance deadline; to announcing the State no longer had an approved vendor, without addressing whether the program remained in operation; to finally suspending the I/M program indefinitely and announcing that vehicle owners themselves must ensure their vehicles are safe to operate. *See* ECF-46 at 14-15, ECF-46-1 ¶¶ 37-41. This Court should not add to this regulatory whiplash by staying the Order.

Moreover, in weighing the potential confusion to the public the Court should consider Gordon-Darby's likelihood of success on the merits of its claim. Given that Appellants concede their failure to implement the I/M program violates the CAA, there is a strong likelihood that Gordon-Darby will ultimately prevail on its citizen suit claim and obtain a permanent injunction requiring Appellants to implement the I/M program. Staying the Order now would only cause greater confusion when New Hampshire restarts the program at the end of this litigation, which "could undermine confidence in the I/M program and lead to greater noncompliance among motorists" after it resumes. ECF-35 at 42.

The public interest is also served by preserving the program's environmental benefits. Evidence in the record shows the I/M program reduces harmful emissions by identifying vehicles with faulty emission control systems and incentivizing

20

drivers to maintain their vehicles to avoid failing inspection. ECF-10-1 at 14; ECF-10-2 ¶¶ 44-46. Without the program, these defects will go undetected and vehicle emissions will increase. Appellants deny the I/M program's environmental benefits, relying on New Hampshire's own petition seeking EPA approval to eliminate the program to assert that the program's removal will not affect air quality. Stay Mot. 20. But that self-serving analysis, which has not been approved by EPA and is not even in the record for this case, does not support Appellants' position. At best, it only asserts that the program's removal will not cause exceedances of EPA's national ambient air quality standards. *See* ECF-22-2 ¶ 45. But that does not mean the public will not be harmed by the program's elimination: it is "well-established in the scientific literature" that the ozone pollution generated in part by vehicle emissions "contributes significantly to [negative] health effects, even at or below" the level of these standards. *N.C. v. Tenn. Valley Auth.*, 593 F. Supp. 2d 812, 824 (W.D.N.C. 2009).

Finally, maintaining the Order would preserve the program's public safety benefits. New Hampshire's I/M program includes both an emissions check and a physical inspection of critical safety equipment like brakes. Eliminating these safety inspections would lead to more unsafe vehicles on the road, endangering other drivers. ECF-10-1 at 14; ECF-10-4 ¶¶ 7-8, 11-12.

Appellants dispute whether their compliance with the Order would actually involve continued safety inspections, arguing that the SIP only encompasses the emissions portion of New Hampshire's I/M program and that the Order cannot compel Appellants to resume safety inspections. Stay Mot. 20-21. As an initial matter, Appellants are incorrect: EPA incorporated the entirety of New Hampshire's I/M program regulations, including the safety-related requirements, into the State's SIP with minor exceptions not relevant here. 40 C.F.R. § 52.1520(c); 89 Fed. Reg. 33232, 33233 (Apr. 29, 2024). Regardless, whether safety inspection requirements are technically part of New Hampshire's SIP is ultimately irrelevant because as a practical matter, New Hampshire cannot implement the emissions portion of its I/M program without also operating the safety inspection portion. Appellants' own witness agreed that "as the state's I/M program is currently structured, the safety and emissions inspection portions of the I/M program are *integrated* and *cannot operate independently*." ECF-39-1 ¶ 6 (emphases added). Thus, the Court can properly consider the I/M program's safety benefits in assessing whether the public interest supports denying the stay.

## CONCLUSION

For the foregoing reasons, the Court should deny Appellants' Motion to Stay Order Pending Appeal.

Dated: March 26, 2026

Amy Manzelli
Andrian Lee
BCM Environmental & Land Law,
PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com

Respectfully submitted,


*/s/ Andrew D. Knudsen*
Allison D. Wood
Andrew D. Knudsen
Kirsten M. Bahnson
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com
kbahnson@mcguirewoods.com

*Counsel for Plaintiff-Appellee*
*Gordon-Darby Holdings, Inc.*

23

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that this Response complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 5194 words and complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it was typed in 14-point Times New Roman font.

/s *Andrew D. Knudsen*
ANDREW D. KNUDSEN

**CERTIFICATE OF SERVICE**

I certify that on March 26, 2026 a copy of this filing was served via the Court's CM/ECF system on all counsel of record.

/s *Andrew D. Knudsen*
ANDREW D. KNUDSEN