# United States Court of Appeals
## For the First Circuit
_____

No. 26-1209

GORDON-DARBY HOLDINGS, INC.,

Appellee,

v.

ROBERT L. QUINN, in the official capacity as Commissioner of the New Hampshire Department of Safety; ROBERT R. SCOTT, in the official capacity as Commissioner of the New Hampshire Department of Environmental Services,

Appellants.
_____

## APPELLANTS' REPLY TO APPELLEE'S RESPONSE OPPOSING APPELLANTS' MOTION TO STAY ORDER PENDING APPEAL

Appellants Robert Quinn, Commissioner of the New Hampshire Department of Safety ("NHDOS"), and Robert Scott, Commissioner of the New Hampshire Department of Environmental Services ("NHDES") (collectively, "Appellants"), by and through their undersigned counsel, the Office of the New Hampshire Attorney General, and pursuant to Fed. R. App. Proc. 27(a)(4), respectfully reply to the March 26, 2026 response ("Response") of Appellee Gordon-Darby Holdings, Inc. ("Appellee"), which opposes Appellants' motion to

1

stay the January 27, 2026 Order of the District Court granting Appellee's motion for a preliminary injunction (the "Order") (ECF-35) (McCafferty, J.), as follows:

## INTRODUCTION

Gordon-Darby Holdings, Inc. ("Appellee")—a for-profit company seeking to use a Clean Air Act ("CAA") citizen suit to vindicate private contractual interests which Appellee had bargained away—opposes Appellants' request for a stay pending appeal.  Herein, Appellants briefly rebut Appellee's arguments and reiterate their position that the District Court erred by granting a preliminary injunction compelling State officials to implement a vehicle inspection and maintenance ("I/M") program where the state legislature had repealed the statutory authority for the program and where the plaintiff filed its complaint prematurely and failed to allege standing therein.

1.  The District Court's Failure to Hear and Decide Appellants' Rule 12(b)(1) Motion to Dismiss Warrants a Stay Pending Appeal.

Appellee misconstrues Appellants' position regarding the District Court's deferral of Appellants' Rule 12(b)(1) challenge to its Article III jurisdiction.  Motion at 7 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).  Appellee's argument that the District Court addressed standing under a "more demanding" standard when it found a likelihood of standing by taking "evidence" into account when it issued the injunction misses the point.  Response at 5-6.  A complaint must allege sufficient facts to establish standing and cannot be

2

amended through other briefing.  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483-84 (6th Cir. 2020).  District courts are obligated to determine standing "at the pleading stage." *Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 84 (1st Cir. 2023).

Failure to first rule on Appellants' Rule 12(b)(1) motion challenging standing is thus reversable error regardless of any substantial likelihood that "evidence" not contained in the four corners of the complaint might reveal standing.  *Id.*  Whether "certain facts establish standing is a question of law." *Wilson v. HSBC Mortg. Servs., Inc.,* 744 F.3d 1, 8 (1st Cir. 2014).  Even accepting Appellee's evidence of harm, Appellee lacks standing as a matter of law.

> 2. <u>Appellee Cannot Identify any Legally Cognizable Right It Possesses to Remedy the Alleged Harm.</u>

Appellee argues the economic harm to its subsidiary is an "obvious" injury in fact (Response at 8 (citing ECF-35 at 14-15, 16-17)) but does not identify any legally cognizable right of Appellee to seek redress for such injury enforceable under the CAA.  Appellee's "obvious" (and only alleged) injuries "flow from New Hampshire exercising its contractual rights" (ECF-35 at 35), which Appellee does not dispute were bargained for—including the State's right to terminate the contract for convenience.  ECF-1 at 38.  Yet, the complaint does not allege any contract claims, and neither the SIP nor the CAA require the State to contract with a vendor (much less a particular vendor).  Motion at 15-17 (citing 40 C.F.R. Part 52 Subpart EE).

3

While the Order finds the "I/M program" requires the State "to contract with" a program vendor to administer the program (*id.* at 7 (citing N.H. Code Admin. R. 3202.24)), this finding is based on a rule in the SIP that merely defines the term "supplier"; it does not impose a regulatory requirement on the State. Where Appellee's harm arises from a contract that is not legally required under the SIP or the CAA, Appellee cannot demonstrate Article III standing "in connection with the alleged CAA violation." *Conservation Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 83 (1st Cir. 2025). The CAA does not authorize additional judicial remedies for private contractual harm. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16-18 (1981).

3.  Appellee Cannot Seek Private Contract Remedies in a Citizen Suit.

Appellee's argument that *Sea Clammers*, 453 U.S. at 16-17, does not preclude a citizen suit plaintiff from seeking equitable relief in the form of specific performance of a lawfully terminated contract to remedy private harm is based on a misreading of the case. Response at 10. *Sea Clammers* held that the "elaborate enforcement provisions" contained in the Clean Water Act's citizen suit provisions evinced an intent to preclude pursuit of "impl[ied] additional judicial remedies for private citizens." *Sea Clammers*, 453 U.S. at 14. An injunction issued to remedy Appellee's private contractual harm by mandating specific performance of a public contract is clearly a private equitable remedy which exceeds the District Court's

4

jurisdiction to enforce emission standards or limitations in a citizen suit.  42 U.S.C. §7604(a).

Appellee's argument that it seeks only "equitable relief authorized by" the CAA citizen suit provision and "not … an order requiring Appellants to enter into a new contract" (Response at 10-11) cannot overcome the fact that Appellee's entire standing showing is based on alleged private contract harm, which Appellee now seems to admit is incapable of redress in a citizen suit.  *Id.*  If Appellee does not seek to vindicate its private contract rights through this action, then it does not have standing.  Conversely, CAA citizen suits do not authorize private remedies to vindicate private contract rights. It was this circular logic that evidences the District Court's error of law in finding a substantial likelihood of standing.

4.  Appellants Duly Raised and Preserved All Arguments Below.

Appellee contends Appellants never raised anti-commandeering arguments below (Response at 10-13), yet the record reflects the opposite.  *See* ECF-20-1 at 6-7; ECF-22 at 4, 6-7.  The Order does not acknowledge or address such arguments.

Appellee also wrongly claims Appellants did not challenge Appellee's contentions below that its economic harm was irreparable.  *Id.* at 18.  Appellants in fact argued the traditional economic harm claimed by Appellee, while "substantial" (even if actionable), would not "threaten the existence" of the movant parent

5

company.[1]  ECF-22 at 9 (citing *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009)). The Order finds "repeal of the I/M program will likely drive" the subsidiary (not the parent-Appellee) "out of business" (ECF-35 at 14), but neither acknowledges nor addresses Appellants' arguments that driving a subsidiary out of business cannot be equated with threatening the existence of the parent company.  Nor does the Order acknowledge or address the evidence that Appellee's clients include several states much larger than New Hampshire.  ECF-22 at 9-10 (citing ECF-22-3, ¶¶11, 115).

The Order's failure to even acknowledge (much less address) State sovereignty and whether economic harm to a sole-purpose subsidiary is irreparable demonstrates additional bases for vacatur of the Order and the propriety of a stay.

5. <u>None of the Cases Cited by Plaintiff Involved a District Court Requiring State Officials to Implement an I/M Program in the Absence of State Law Authority.</u>

Appellee cites to two cases for the proposition that "multiple courts have required states to continue implementing" an I/M program "even where the state had repealed the statutes underlying its I/M program." Response at 14 (citing *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1179, 1172 (D. Az. 2001) and *Ky. Res.*

---

[1] Appellee is itself a wholly owned subsidiary.  ECF-3 at 1.

*Council, Inc. v. United States EPA*, 304 F. Supp. 2d 920, 928 (W.D. Ky. 2004)).[2] The district courts in those cases did not, however, "require[]" the Defendants "to continue implementing" an I/M program in the absence of state law authority.

First, *Ky. Res. Council* did not involve the repeal of legislative authority to implement and enforce an I/M program, but rather legislation which directed the state agency to eliminate the program. *Ky. Res. Council*, 304 F. Supp. 2d at 924. This case is distinguishable because here the State legislature did not command Appellants, in conflict with federal law, to discontinue the I/M program contained in the SIP. The legislature repealed Appellants' authority to implement and enforce the program.

Second, the *Sweat* District Court's finding that Arizona's repeal of statutory authority for operation of its I/M program was preempted under the Supremacy Clause was wrongly decided for the same reasons set out in the Motion. Motion at 10-12. Nonetheless, the *Sweat* Court did not mandate immediate resumption of an I/M program; it simply ordered a status conference for implementation of the

---

[2] Appellee later cites to two additional cases, *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705, 725 (E.D. Pa. 2002) and *Citizens for Pennsylvania's Future v. Mallory*, 2002 U.S. Dist. LEXIS 24406, *12 (E.D. Pa. 2002) for the proposition that *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 533 F. Supp. 869, 879 (E.D. Pa. 1982), is no longer good law because the same district court decided all three cases. This argument is unpersuasive because neither *Clean Air Council* nor *Citizens for Pennsylvania's Future* involved the repeal of legislation authorizing an I/M program.

Court's summary judgment order. *Sweat*, 200 F. Supp. 2d at 1171, 1179-1181.

Moreover, the *Sweat* Court declined to compel immediate compliance with

Arizona's SIP. *See* Arizona District Court (Silver, J) Order dated July 23, 2002, at

3 (attached hereto as **Exhibit A**). Ultimately, the Court in *Sweat* dismissed the

case before compelling state action following the United States Environmental

Protection Agency's ("EPA") approval of the SIP amendment. *See Sweat* docket

entries #40-41, attached hereto as **Exhibit B**.

Accordingly, none of the cases Appellee cites support the issuance of the

extraordinary relief of a preliminary injunction compelling immediate compliance

by state officials in the absence of state statutory authority. And even if the

Supremacy Clause could serve to commandeer State actors to enforce and

implement the SIP, the Tenth Amendment would remain a bulwark maintaining

State sovereignty to refuse to take contract actions not mandated or restricted by

any State rule incorporated into the SIP, or to implement the I/M program absent

authority to do so.

6. <u>Federal Enforceability and State Law Authority Are Separate and Independent Aspects of a SIP.</u>

Appellee argues the I/M program is federally enforceable in a vacuum of

State law authority "[b]y virtue of its approval and inclusion in the SIP." *Id*. at 1.

This argument confuses the State rules incorporated into the SIP with the State

8

statutes that authorized performance of the program, which are <u>not</u> incorporated into the SIP. The CAA instead requires assurances of adequate state law authority to implement a SIP. 42 U.S.C. §7410(a)(2)(E); 40 C.F.R. §51.230. State rules incorporated into the SIP are set forth at 40 C.F.R. Part 52 Subpart EE. *See also* ECF-39-1, ¶¶ 9-14. The SIP does not incorporate the repealed State laws (RSA 266:1 and RSA 266:6) which authorized implementation and enforcement of the I/M program. Therefore the "federally-enforceable" SIP does not provide any independent authority to require vehicle inspections or enforce such a requirement against New Hampshire motorists.

7. <u>Appellee Is Estopped from Disputing the Need for Governor and Executive Council Approval.</u>

The Response disputes that State law requires Governor and Executive Council to approve the I/M program vendor contract. *Id* at 15. Below, Appellee supported its preliminary injunction motion with the argument that unavoidable delays in state procurement processes to secure a replacement program vendor (including Governor and Council approval of a contract) warranted the immediate reinstatement of its subsidiary's contract. ECF-28 at 8 (citing RSA 21-I:11; RSA 4:15). Having prevailed below based on this argument, Appellee should be judicially estopped from arguing contrawise herein. *New Hampshire v. Maine*, 532

9

U.S. 742, 749 (2001).[3]  Appellee's argument is incorrect in any event.  Motion at 12-14.

    8.  <u>Irreparable Harm to Legitimate State Sovereign Interests Warrants a Stay.</u>

The Response argues the State lacks any legitimate sovereign interest in defending State legislation, which Appellee further argues is preempted by the CAA.  *Id.* at 18.  That argument fails as discussed in Appellants' Motion.  Motion at 10-12.  Appellee nowhere attempts to refute Appellants' arguments that State sovereignty also includes the discretion to make procurement decisions, or that reinstating the vendor contract (even if permissible) would not serve to reenact the statutes necessary to require and enforce vehicle inspections under State law.  *Id.* at 12.  Continued enforcement of the Order, including potential contempt sanctions, against state officials who lack legal authority to comply with the Order constitutes irreparable harm warranting a stay.

    9.  <u>Appellee Fails to Identify Any Public Interest Weighing Against a Stay.</u>

The Response argues the public interest favors denying the stay because ensuring compliance with the CAA is in the public interest and because preservation of the Order will reduce public confusion.  *Id.* at 19.  The Order seeks to enforce a procedural requirement—obtaining EPA approval of a SIP revision

---

[3] The District Court incorrectly rejected this argument when it denied the stay. ECF-49 at 17, n. 12.

demonstrating air quality standards can be maintained without an I/M program where (as here) such standards have already been attained. ECF-35 at 29 (citing 40 C.F.R. §51.350(c)). The record shows the State is most likely in substantive compliance with ozone air quality standards and will remain so even without the program. Motion at 20. Appellee's public interest argument therefore elevates procedural noncompliance over the substantive harm to the public that the CAA serves to prevent.[4] Appellee's additional arguments regarding alleged environmental and traffic safety benefits are addressed in Appellants' Motion at 20-21.[5] Because the type of injunctive relief ordered here can, at best, achieve only technical, procedural compliance while EPA considers the State's SIP amendment, a stay does not weigh against the public interest and will not cause any additional public confusion.

---

[4] The primary purpose of the CAA is to "to protect and enhance" air quality. 42 USCS § 7401(b)(1).

[5] Appellee's assertion that Appellants agreed vehicle safety and emissions inspections cannot operate independently of each other (Response at 22) mischaracterizes the Declaration, which specifies this "does not mean that vehicle safety unrelated to emissions are required by the SIP." ECF-39-1, ¶6.

Respectfully submitted,

JOHN M. FORMELLA
ATTORNEY GENERAL

April 2, 2026

/s/ Mark L. Lucas
Mark L. Lucas, Bar # 1222214
Joshua C. Harrison, Bar #1194556
Assistant Attorneys General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

/s/ Joshua Harrison
Joshua Harrison, Bar #1194556

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing reply meets the type-volume limitation and contains 2,338 words in compliance with Federal Rule of Appellate Procedure 27(d)(2)(C), based on the word count of the word-processing system used to prepare this reply.

/s/ Mark L. Lucas
Mark L. Lucas, Bar # 1222214